IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMANDA ZARFOS on behalf of herself and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Ruby Tuesday, Inc.,<br><br>Defendant. | Civil Action File No. 17-cv-6494<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>**Jury Trial Demanded** |

Plaintiff Amanda Zarfos, by and through her undersigned counsel, individually and on behalf of the class of others similarly situated, respectfully alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Defendant Ruby Tuesday, Inc. ("Defendant" or "Ruby Tuesday") owns and/or operates the Ruby Tuesday restaurant in Times Square located at 585 7th Ave, New York, New York 10036 (the "Times Square Restaurant.").

2. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for Defendant's failure to pay Plaintiff and other similarly-situated tipped employees wages for all hours worked and minimum wages for non-tipped work in violation of the FLSA tip credit provisions at the Times Square Restaurant.

3. Plaintiff's claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of herself and all other similarly-situated persons who are a Plaintiff or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. 216(b) and who are or were (a) current or former employees of Defendant, including servers and bartenders, (b)

receiving sub-minimum hourly wages under the tip-credit provisions of the federal and state law ("Tip-Credit Employees"), and (c) employed by Defendant at the Times Square Restaurant at any time during the applicable statute of limitations period covered by this Complaint (*i.e.* two years for FLSA violations, and three years for willful FLSA violations) up to and including the date of final judgment in this matter (the "FLSA Collective").

4. With respect to Plaintiff and other New York class members, this lawsuit further arises under the New York Labor Law, Minimum Wage Act ("NYLL"), Article 19, § 650, *et seq.*, for Defendant's failure to pay Plaintiff and other similarly-situated New York tipped employees all earned minimum wages.

5. Plaintiff's claims under the NYLL are brought as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23 on behalf of herself and on behalf of all other similarly-situated persons who are current or former Tip-Credit Employees employed by Defendant at the Times Square Restaurant for the period of August 25, 2011 to the date of the final disposition of this action (the "NYLL Class").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391.

## THE PARTIES

**Plaintiff**

9. Plaintiff Amanda Zarfos is an adult individual who is a resident of York, Pennsylvania.

10. Plaintiff was employed as a bartender at the Times Square Restaurant from approximately August 2009 until January 2016.

11. Plaintiff is a Tip-Credit Employee earning less than the applicable minimum wage as a bartender at the Times Square Restaurant.

12. Plaintiff is an "employee" within the meaning of the FLSA and the NYLL.

13. While paying her at the tipped wage, Defendant required Plaintiff to spend in excess of 20% of her work time during her bartender shifts performing work that involved no customer interaction and did not generate tips.

14. Defendant further required Plaintiff to work off-the-clock.

15. Plaintiff's written consent is attached hereto as Exhibit A.

**Defendant**

16. Ruby Tuesday is a Tennessee corporation headquartered in the Eastern District of Tennessee.

17. Ruby Tuesday owns and operates the Ruby Tuesday casual dining restaurant chain.

18. As of August 23, 2017, Ruby Tuesday owned and operated approximately 658 domestic Ruby Tuesday restaurants.

19. Ruby Tuesday restaurants can be found in 44 states, with company-owned and operated restaurants concentrated primarily in the Southeast, Northeast, Mid-Atlantic, and Midwest regions of the United States.

20. Ruby Tuesday owns and/or operates the Times Square Restaurant.

## COVERAGE UNDER THE FLSA

21. At all relevant times, Ruby Tuesday and the Times Square Restaurant have continuously been an employer of multiple employees engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

22. At all relevant times, Ruby Tuesday and the Times Square Restaurant together constituted an enterprise covered by the FLSA and as defined by 29 U.S.C. §§ 203(r) and 203(s).

23. At all relevant times, Ruby Tuesday and the Times Square Restaurant had annual gross volume of sales made or business done of over $500,000 for each year in the relevant period.

24. At all relevant times, Ruby Tuesday and the Times Square Restaurant had multiple employees including Plaintiff and Tip-Credit Employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

25. At all relevant times, Plaintiff and Tip-Credit Employees were "employees" of Ruby Tuesday and the Times Square Restaurant as that term is used in 29 U.S.C. § 203(e)(1).

26. At all relevant times, Ruby Tuesday and the Times Square Restaurant employed, and/or continues to employ, Plaintiff and Tip-Credit Employees within the meaning of the FLSA.

27. Ruby Tuesday and the Times Square Restaurant are an employer and/or a joint employer of Plaintiff and Tip-Credit Employees within the meaning of the FLSA.

## COVERAGE UNDER THE NYLL

28. During the entire course of Plaintiff's and Tipped-Credit Employees' employment at the Times Square Restaurant, Ruby Tuesday was an "employer" as defined by the NYLL § 651.

29. During the entire course of Plaintiff's employment at the Times Square Restaurant, Plaintiff and Tipped-Credit Employees were an "employee" as defined by the NYLL § 651.

30. During the entire course of Plaintiff's employment at the Times Square Restaurant, Plaintiff and Tipped-Credit Employees were not exempt from the minimum wage provisions of the NYLL.

## FACTS

**I.    Ruby Tuesday Restaurants are Centrally Controlled and Subject to Uniform Policies, Practices, and Standards.**

31. Ruby Tuesday operates a centralized Restaurant Support Center located in Tennessee.

32. Through this Support Center, Ruby Tuesday maintains control, oversight, and direction over the operation of the Ruby Tuesday restaurants, including their employment and labor practices.

33. This Support Center houses its company-wide Training and Culinary Facility.

34. Legal, Finance, Accounting, Supply Systems, Human Resources, Marketing, and Information Technology are all centrally headquartered at the Support Center. *See* www.rubytuesday.com/careers/.

35. All Ruby Tuesday restaurants are directly managed and controlled by Ruby Tuesday to make sure that they conform to Ruby Tuesday's policies and practices.

36. All Ruby Tuesday restaurants are visited regularly by all levels of supervision of Ruby Tuesday to help ensure that the Ruby Tuesday restaurants adhere to all aspects of Ruby Tuesday's standards.

37. All Ruby Tuesday restaurants are operated pursuant to operations manuals issued by Ruby Tuesday that cover all aspects of restaurant operations.

38. Plaintiff and Tip-Credit Employees received substantially similar training.

39. Plaintiff and Tip-Credit Employees were required to review the same or substantially similar employment training pamphlets and training videos.

40. Ruby Tuesday implements centralized training for the managers of each of the Ruby Tuesday restaurants.

41. Ruby Tuesday promotes a "One Team One Dream" slogan and philosophy with the idea and understanding that all Ruby Tuesday restaurant managers throughout the country are part of a single team. *See* www.rubytuesday.com/careers/.

42. Ruby Tuesday maintains uniform job descriptions for servers and bartenders.

43. Ruby Tuesday maintains uniform task checklists for servers and bartenders at all Ruby Tuesday restaurants.

44. Ruby Tuesday has a companywide policy of limiting overtime work.

45. Ruby Tuesday has a centralized timekeeping system that allows Ruby Tuesday to track each restaurant's overtime record.

46. Ruby Tuesday has a uniform bonus policy that applies to all restaurant managers.

47. The restaurant manager bonus policy takes into account the restaurant's labor costs.

48. Ruby Tuesday utilizes a centralized system of staffing all of its restaurants using the same software program.

49. Ruby Tuesday updates the Ruby Tuesday restaurants' staffing plans on a quarterly basis at the level of its regional directors, rather than at the level of individual restaurants.

50. Plaintiff and Tip-Credit Employee servers and bartenders are similarly situated at all Ruby Tuesday restaurants, including the Times Square Restaurant – they perform similar job functions pursuant to national employment standards set by Ruby Tuesday.

**II.  Ruby Tuesday Violates the FLSA and the NYLL by Requiring Plaintiff and Tip-Credit Employees To Perform Substantial Non-Tip-Producing Tasks Without Being Paid Minimum Wage.**

51. Under the FLSA, as interpreted by the Department of Labor (the "DOL"), employers may not take the tip credit for time the employee is engaged in a non-tipped job and instead must be paid at the minimum wage. 29 CFR 541.56(e) (the "Dual Jobs regulation").

52. The Dual Jobs regulation imposes both quantitative and qualitative restrictions on the employer's ability to take the tip credit for non-tip-producing tasks, as explained in the DOL's Field Operations Handbook (the "Handbook" or "FOH").

53. The quantitative restriction limits the amount of time an employee can spend on tasks related to the tipped occupation, as follows:

> 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties, are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

FOH § 30d00(e)(2) (rev. 668, June 20, 2012).

56. The Handbook continues:

> [W]here the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

FOH § 30d00(e)(3).

57. This "20 percent tolerance," which is one method of determining whether an employee is effectively engaged in a dual jobs position, is referred to as the "20 Percent Rule." Courts have routinely utilized this quantitative standard.[1]

58. The qualitative aspect of the Dual Jobs regulation prohibits taking the tip credit for work that is "not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations." FOH § 30d00(e)(4).

59. Ruby Tuesday instituted a national policy requiring Plaintiff and Tip-Credit Employees to work dual jobs that included tipped tasks (directed toward producing tips) and substantial non-tip-producing tasks ("Non-Tipped Work"). The Non-Tipped Work exceeds 20 percent of Plaintiff's and Tip-Credit Employees' time during the workweek, for which they were not paid the applicable minimum wage.

60. Such Non-Tipped Work for servers includes but is not limited to: setting up the dining room areas, brewing beverages, cutting lemons, filling ice bins, baking bread, restocking and cleaning the salad bar, polishing and stocking glassware, helping pack to-go orders,

---

[1] *See e.g., Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881 (8th Cir. 2011); *Ash v. Sambodromo, LLC,* 676 F. Supp. 2d 1360, 1366-67 (S.D. Fla. 2009); *Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 581-84 (S.D.N.Y. 2015) (collecting cases).

restocking salt/pepper and sugar caddies, pulling away tables to clean under booths, cleaning the server alley, sweeping floors, placing and removing silverware from dishwashing machine, polishing and rolling silverware, wiping wood, starting and warming the oven, maintaining and cleaning sanitation buckets, and cleaning and setting floor mats.

61. Such Non-Tipped Work for bartenders includes but is not limited to: setting up and cleaning the bar area (front and back), stocking glassware, wiping and washing glassware; inventorying wine and spirits; cleaning sinks, keg coolers, gaskets, and ice baths; handling to-go orders for the restaurant; cashing out servers; and performing server side work.

62. Ruby Tuesday has a policy and practice of paying Plaintiff and Tip-Credit Employees, sub-minimum, tip-credit wages, even when Ruby Tuesday requires them to perform Non-Tipped Work that is not related to their tipped occupation, such as baking bread and performing other tasks not related to their tipped occupation.

63. Even if the Non-Tipped Work Ruby Tuesday requires Plaintiff and Tip-Credit Employees to perform was related to their tipped occupation, Ruby Tuesday violates the FLSA by its policy and practice of requiring Plaintiff and Tip-Credit Employees to perform such work for more than 20 percent of their time worked during the workweek.

64. Plaintiff was required to perform non-tip-producing tasks for more than 20 percent of her hours in the workweek without being paid a minimum wage.

65. Plaintiff also was required to perform tasks that were unrelated to and not incidental to her tip-producing occupation without being paid a minimum wage.

66. Ruby Tuesday's policy and practice of requiring Plaintiff and Tip-Credit Employees to perform excessive and/or unrelated Non-Tipped Work while paying them sub-minimum, tip-credit wages violates the FLSA.

67. Similar to the FLSA's Dual Jobs framework, New York has an analogous prohibition concerning Non-Tipped Work. Under the tip-credit provisions of the NYLL and accompanying regulations, an employer may, in limited circumstances, pay a "food service worker"—including servers, bartenders, and bussers—a sub-minimum, tip-credit hourly wage, provided the employee works in a non-tipped occupation for less than two (2) hours or twenty (20) percent of a shift, whichever is shorter. *See* NYCRR §§ 146-2.9, 146-3.4. If a "food service worker" works for more than two (2) hours or twenty (20) percent of a shift in a non-tipped occupation, the employer forfeits the right to take a tip-credit for that shift. *Id*.

68. Ruby Tuesday's policy and practice of requiring their Tip-Credit Employees, including Plaintiff, to perform work in a non-tipped occupation for more than two (2) hours and/or twenty (20) percent of their shifts, while paying those employees sub-minimum, tip-credit hourly wages, violates the NYLL.

**III.   Ruby Tuesday Violates the FLSA and NYLL by Failing to Pay Plaintiff and Tip-Credit Employees for Off-the-Clock Work.**

69. Ruby Tuesday encourages Plaintiff and Tip-Credit Employees to work off-the-clock by limiting the hours that they are permitted to be clocked in.

70. Plaintiff and Tip-Credit Employees worked off-the-clock without pay, with the knowledge, expectation, and acquiescence of Ruby Tuesday.

71. The willful refusal to pay wages for off-the-clock work constitutes a violation of the FLSA and the NYLL.

72. The willful refusal to pay wages for off-the-clock work further caused Plaintiff and Tip-Credit Employees to regularly work over forty (40) hours per week without being paid overtime compensation as required by both the FLSA and the NYLL.

**COUNT I**

**FAIR LABOR STANDARDS ACT VIOLATIONS**
**FAILURE TO PAY MINIMUM WAGE**
**(On Behalf of Plaintiff and the FLSA Collective)**

77. Plaintiff, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

78. At all relevant times, Defendant has been and continues to be an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

79. At all relevant times, Defendant employed, and/or continues to employ, Plaintiff and each member of the FLSA Collective within the meaning of the FLSA.

80. At all relevant times, Defendant failed to compensate its employees, including Plaintiff and the FLSA Collective, at the applicable federal or state minimum wage for Non-Tipped Work exceeding 20 percent of hours worked in the workweek in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*

81. At all relevant times, Defendant failed to compensate its employees, including Plaintiff and the FLSA Collective, at the applicable federal or state minimum wage for tasks that were unrelated to and non-incidental to a tip-producing occupation.

82. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83. Due to Defendant's FLSA violations, Plaintiff and the FLSA Collective were damaged and are entitled to recover from Ruby Tuesday compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and expenses of this action, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**FAIR LABOR STANDARDS ACT VIOLATIONS**

## UNPAID WAGES
### (On Behalf of Plaintiff and the FLSA Collective)

84.  Plaintiff, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

85.  At all relevant times, Defendant has been and continues to be an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

86.  At all relevant times, Defendant employed, and/or continues to employ, Plaintiff and each of the members of the FLSA Collective within the meaning of the FLSA.

87.  At all relevant times, Defendant had a uniform policy and practice of knowingly permitting Plaintiff and the FLSA Collective to work off-the-clock without compensation.

88.  While purporting to prohibit off-the-clock work, Defendant's policies and practices of limiting hours worked, and not paying minimum wage for non-tip-producing work actually encouraged Plaintiff and the FLSA Collective to work off-the-clock without compensation.

89.  Defendant failed to pay Plaintiff and the FLSA Collective wages for off-the-clock work.

90.  Defendant's conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

91.  Due to Defendant's FLSA violations, Plaintiff and the FLSA Collective were damaged and are entitled to recover from Ruby Tuesday compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and expenses of this action, pursuant to 29 U.S.C. § 216(b).

### **COUNT III**

**FAIR LABOR STANDARDS ACT VIOLATIONS**
**OVERTIME WAGES**
**(On Behalf of Plaintiff and the FLSA Collective)**

92. Plaintiff, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

93. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendant and protect Plaintiff and the FLSA Collective.

94. Defendant has failed to pay Plaintiff and the FLSA Collective overtime wages for all of the hours that they worked in excess of 40 hours in a work week.

95. As a result of Defendant's violations of the FLAS, Plaintiff and the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §216(b).

96. Defendant's unlawful conduct, as described in the Complaint, have been willful and intentional. Defendant is aware or should have been aware that the practices described in the Complaint were unlawful. Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

97. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**COUNT IV**
**NEW YORK LABOR LAW**
**FAILURE TO PAY MINIMUM WAGE**
**(On Behalf of Plaintiff and the NYLL Class)**

98. Plaintiff, on behalf of herself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein

99. Plaintiff and the proposed class are current and former Tip-Credit Employees of Defendants who worked at Times Square Restaurant in the last six (6) years.

100. This claim is brought pursuant to Rule 23 because the members of the NYLL Class are so numerous that joinder of all members is impracticable.

101. Upon information and belief, Defendant has employed well over 100 Tip-Credit Employees—the NYLL Class—at the Times Square Restaurant during the limitations period.

102. Plaintiff and the members of the NYLL Class are equally affected by Defendant's minimum wage violations, and the relief sought is for the benefit of the Plaintiff and the NYLL Class that Plaintiff seeks to represent.

103. The issues involved in this lawsuit present common questions of law and fact, including but not limited to including whether Defendant requires members of the NYLL Class to perform work unrelated to their tip-producing occupation, whether members of the NYLL Class are required to perform in a non-tipped occupation in excess of two (2) hours per shift or twenty (20) percent of their time worked during a shift, whether Defendant has violated the NYLL through its employment policies and practices, whether Defendant acted willfully, and whether Defendant acted in good faith..

104. The common questions of law and fact in this lawsuit predominate over the variations which may exist between members of the NYLL Class, if any.

105. Plaintiff's claims are typical of the claims of the other members of the NYLL Class in that they all were required or are required to perform work in a non-tipped occupation in excess of two (2) hours per shift or twenty (20) percent of their time worked during a shift.

106. Plaintiff's claims are further typical of the claims of the other members of the NYLL Class in that they all were required to perform work that was unrelated to their tip-producing occupation.

107. The individual ascertainable losses and damages of the Plaintiff and each member of the NYLL Class are not sufficiently large to justify instituting individual actions.

108. Plaintiff will fairly and adequately represent and protect the interests of the other class members.

109. Plaintiff has retained competent and experienced counsel.

110. Plaintiff does not have any interests which are antagonistic to or are in conflict with the other members of the class whom Plaintiff seeks to represent.

111. Bringing this action as a class action is superior to other available methods for the fair and efficient adjudication of the claims which are asserted, and no unusual difficulties are likely to be encountered in the management of this case as a class action.

112. If individual actions were required to be brought by each member of the NYLL Class injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as for Defendant.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the NYLL Class is entitled.

113. Damages to the individual class members are relatively small in comparison to the costs of litigation, making the expense of individual litigation of these claims prohibitive for plaintiff and the other class members.

114. This action is properly maintainable as a class action.

115. In violation of the NYLL, at all relevant times, Defendant's required Plaintiff and

members of the NYLL Class, to perform work in a non-tipped occupation in excess of the legal limit, while paying them sub-minimum, tip-credit hourly wages.

116. Through its knowing or intentional failure to pay minimum hourly wages to Plaintiff and the members of the NYLL Class, Defendant has willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

117. Due to Defendant's violations of the NYLL, Plaintiff and members of the NYLL Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### COUNT V
### NEW YORK LABOR LAW
### UNPAID WAGES
**(On Behalf of Plaintiff and the NYLL Class)**

118. Plaintiff, on behalf of herself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

119. The NYLL requires covered employers, such as Defendant, to pay all non-exempt employees the prevailing minimum wage for all hours worked. Plaintiff and the NYLL Class were not exempt from the requirement that Defendant pay them the prevailing minimum wage under the NYLL.

120. Defendant did not pay Plaintiff and the NYLL Class the prevailing minimum wage for all hours worked.

121. At all relevant times, Defendant had a uniform policy and practice of knowingly permitting Plaintiff and the NYLL Class to work off-the-clock without compensation.

122. While purporting to prohibit off-the-clock work, Defendant's policies and practices of limiting hours worked, and not paying minimum wage for non-tip producing work, actually encouraged Plaintiff and the NYLL Class to work off-the-clock without compensation.

123. The foregoing conduct constitutes willful violations of the NYLL.

124. Defendant's violations of the NYLL have significantly damaged Plaintiff and the NYLL class and entitle them to recover the total amount of their unpaid minimum wage, an additional amount as liquidated damages, and attorneys' fees and costs.

## COUNT VI
## NEW YORK LABOR LAW
## OVERTIME WAGES
### (On Behalf of Plaintiff and the NYLL Class)

125. Plaintiff, on behalf of herself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

126. Throughout the NYLL period, Plaintiff and the other members of the NYLL Class regularly worked and continue to work in excess of 40 hours per workweek.

127. At all relevant times, Defendant operated under a decision, policy, and plan, and under common policies, programs, and practices that willfully failed to pay Plaintiff and the NYLL Class at one and a half times their hourly wage for all hours worked in excess of 40 hours per workweek.

128. Due to Defendant's NYLL violations, Plaintiff and the members of the NYLL Class are entitled to recover from Defendant damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief against Ruby Tuesday:

1. On the first, second, and third claims for relief:

    a. Designation of this action as a collective action on behalf of the FLSA Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents pursuant to 29 U.S.C. §216(b);

    b. Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

2. On the fourth, fifth, and sixth claims for relief:

    a. Designation of this action as a class action on behalf of the NYLL Class, pursuant to Fed. R. Civ. P. 23, and for Plaintiff to be allowed to give notice of this class action, or that the court issue such notice, to all NYLL Class workers who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Defendant's Times Square Restaurant. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

    b. Unpaid minimum wages and liquidated damages permitted by law

pursuant to the NYLL; and

3. On all claims for relief:

    a. Prejudgment and post-judgment interest;

    b. Reasonable attorneys' fees and costs incurred in prosecuting this action; and

    c. Such other and further relief and this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rule of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: August 25, 2017        TRIEF & OLK

/s/ Ted E. Trief_____
Ted E. Trief
Shelly L. Friedland
Stan Gutgarts
**TRIEF & OLK**
150 E 58th Street, 34th Floor
New York, NY 10155
(212) 486-6060 telephone
(212) 317-2946 facsimile
ttrief@triefandolk.com
sfriedland@triefandolk.com
sgutgarts@triefandolk.com

Andrew Lampros (*pending Pro Hac Vice*)
Christopher B. Hall (*pending Pro Hac Vice*)
**HALL & LAMPROS, LLP**
1230 Peachtree St. N.E.
Suite 950
Atlanta, GA 30309
(404) 876-8100 telephone
(404) 876-3477 facsimile
alampros@hallandlampros.com

chall@hallandlampros.com

ATTORNEYS FOR THE PLAINTIFF